THE STATE OF OHIO, APPELLEE, *v.* DULING, APPELLANT.

(No. 69-83—Decided January 7, 1970.)

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. David H. Bodiker,* for appellee.

*Mr. Robert E. Albright, Mr. James C. Justice* and *Mr. James H. Callard,* for appellant.

CORRIGAN, J. The principal contention of appellant in this appeal is that he was denied his right to a fair trial by

an impartial jury when veniremen were excused for cause because they were opposed in principle to the death penalty in the absence of a conclusive showing that their opinions precluded them from finding the accused guilty of an offense punishable by death. In other words, appellant claims that the manner of questioning some prospective jurors who were excused for cause due to their opposition to the death penalty did not completely conform to the principles laid down in *Witherspoon* v. *Illinois, supra* (391 U. S. 510).

An examination of the record reveals that there were instances during the questioning of prospective jurors on the *voir dire* when the standards set forth in *Witherspoon* were not literally met, namely, some were excused without categorically stating that they would automatically vote against the imposition of capital punishment, no matter what evidence the trial would reveal.

It should be pointed out that our statute (Section 2945.25, Revised Code) contains language which conforms to the requirements of *Witherspoon*. There is no doubt that the trial judge in this case conscientiously tried to impanel a jury within the framework of our Constitution and statutes which would furnish appellant a trial by an impartial jury as guaranteed by the Sixth Amendment to the Constitution of the United States and Section 10, Article I of the Ohio Constitution.

Furthermore, as the court stated in *People* v. *Speck,* 41 Ill. 2d 177, 242 N. E. 2d 208: "The circumstances under which the *voir dire* examination here was conducted were quite different from those in *Witherspoon*. In that case the. court noted that the tone was set when the trial judge said early in the *voir dire*, 'Let's get these conscientious objectors out of the way without wasting any time on them.' In this case there was no hint of a desire for haste or for a perfunctory examination to see how many jurors could be disqualified on the statutory basis alone."

At the time of the *voir dire* in the instant case, Section 2945.25, Revised Code, provided that a person called as a juror could be challenged for cause in a capital case if "his

opinions preclude him from finding the accused guilty of an offense punishable with death."

In *State* v. *Pruett*, 18 Ohio St. 2d 167, 169, we noted that:

"Unlike the Illinois statute, our statute does not authorize a challenge for cause of anyone merely because he says he 'has conscientious scruples against capital punishment, or that he is opposed to the same.' Our statute has, since at least 1869 (66 Ohio Laws 287, 307), apparently agreed with the conclusion stated in the opinion in *Witherspoon,* and thus has authorized challenging a juror for cause only where such a juror had opinions which precluded him from voting for a verdict that would result in the death penalty."

Inasmuch as our statute is in conformity with the requirements set forth in *Witherspoon,* it is apparent that, at the time of the *voir dire* in this case, appellant could have raised questions which were subsequently decided in *Witherspoon.*

We are of the opinion, as we indicated in *Pruett, supra* (18 Ohio St. 2d 167), at page 168, footnote 2, that "since the defendant did not raise any question in the Ohio courts about the right so established by *Witherspoon,* and since that right had long existed under Ohio statutes * * * the defendant's failure to so raise that question should preclude him from raising it now. See *Schmerber* v. *California* (1966), 384 U. S. 757, 765 * * *."

Moreover, because this appeal stems from a postconviction remedy proceeding, our holding in *State* v. *Perry,* 10 Ohio St. 2d 175, also prevents the raising of the issue by appellant now. Paragraph seven of the syllabus in that case reads:

"Constitutional issues cannot be considered in post-conviction proceedings under Section 2953.21 *et seq.,* Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him."

Since the other questions raised by appellant in this appeal were considered, or could have been considered, in his direct appeal, we deem it necessary only to pass on his contention that the trial court erred in overruling his motion for new trial, filed in January 1968, on the basis of newly discovered evidence.

The newly discovered evidence consisted of reports of two state psychiatrists made in 1967 in which they expressed the opinion that appellant could not distinguish right from wrong at the time of commission of the crime. Such evidence is cumulative to former evidence, and it fails to disclose any strong probability that the result would be changed by a new trial, and, therefore is not sufficient evidence to warrant the granting of a new trial.

The trial court did not err in overruling the motion. *State* v. *Petro*, 148 Ohio St. 505.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., MATTHIAS, SCHNEIDER and GRAY, JJ., concur.

DUNCAN, J., dissents.

GRAY, J., of the Fourth Appellate District, sitting for HERBERT, J.

GRAY, J., concurring. Defendant contends that he was denied his rights under the United States Constitution, and cites as his authority *Witherspoon* v. *Illinois*, 391 U. S. 510. I do not think that a federal constitutional question is presented.

For over 100 years, we have had the procedural requirement in the state of Ohio that in order to lay a foundation for review of an alleged error in the appellate courts it is necessary that the matter complained of be called to the attention of the trial court by objection, motion or otherwise, and that there be a ruling by the court thereon. Further, in order to perfect the appeal and to bring the

matter to the attention of the reviewing court the objection made in the trial court, with the ruling thereon, must be stated with the facts, or so much of the evidence as is necessary to explain it, and be incorporated in the bill of exceptions filed in the case. See Sections 2321.03 and 2321.05, Revised Code.

The rule is clearly settled that the disqualification of a juror sitting in the trial of a cause, either civil or criminal, which the exercise of due diligence would have disclosed, is not a sufficient ground for setting aside the verdict and granting a new trial. *Hayward* v. *Calhoun* (1853), 2 Ohio St. 164; *Eastman* v. *Wight* (1854), 4 Ohio St. 157; *Parks* v. *State* (1854), 4 Ohio St. 234; *Kenrick* v. *Reppard* (1872), 23 Ohio St. 333; *Watts* v. *Ruth* (1876), 30 Ohio St. 32.

The party moving for a new trial on such ground must show that he exercised such care and diligence before the juror was sworn, or he will be held to have waived all objections to his competency, which the employment of reasonable diligence would have shown to be well founded.

In order to be available on review, an objection to the competency of a juror must have been raised in the lower court. Objection to his competency cannot be raised for the first time upon review. *Toledo* v. *Strasel* (1909), 12 C. C. (N. S.) 212, affirmed without opinion, 82 Ohio St. 438.

Where a party, at the time a juror is impaneled, fails to make any inquiry of the juror as to his competency, by such omission he waives all objection to the competency of such juror that could have been ascertained by such inquiry. See *Watts* v. *Ruth, supra.*

Such rule is required to prevent constant mistrials, and to protect the rights of the adverse party. Otherwise, if the party were afterward permitted to urge the claimed error on review, such party could lie by and take the chance of a verdict in his favor; if the verdict was adverse, he would be entitled to a new trial. Compare *Eastman* v. *Wight, supra.*

In *Queenan* v. *Oklahoma* (1902), 190 U. S. 548, where it was held that the right to object that a juror was dis-

qualified because it appeared during the trial that he had been convicted of a felony, contrary to his statement on his *voir dire,* is waived by failure to raise the question until after the verdict, Mr. Justice Holmes, commenting on a state statute which does not permit challenge of a juror for cause "after the testimony has been partially heard," at page 552, said:

" * * * But if the court's view was wrong, if the statute is unconstitutional—as to which we do not mean to express a doubt—the prisoner had no right to complain, and if it is not, it was his duty to object at the time if he was going to object at all. He could not speculate on the chances of getting a verdict and then set up that he had not waived his rights."

It is not enough to take the case out of the general rule for a party to show that, at the impaneling of the jury, he was ignorant of a juror's incompetency or believed him to be competent, and the rule applies as well to jurors summoned upon special venire, as well as to jurors drawn from the box.

Defendant had five opportunities to call the alleged error to the attention of the trial court.

(1) At the impaneling of the jury.

(2) At the conclusion of the presentation of the state's case.

(3) At the conclusion of the presentation of all the evidence.

(4) Upon motion for judgment for defendant notwithstanding the verdict.

(5) By means of a motion for a new trial.

The record shows positively that no objection, motion or other means were used to bring the claimed error to the attention of the trial court during the impaneling of the jury.

We do not have the full record before us, so we do not know if defendant availed himself of any or all of the remaining means related above to bring the alleged error to the attention of the trial court. It therefore must be assumed that he did not do so.

Defendant has not urged that he used any of the above means to call the attention of the trial court to the alleged error.

The Ohio rule requires a contemporaneous objection, motion or otherwise to the trial court concerning its ruling on a procedural matter in order to lay foundation for review. This requirement clearly serves a legitimate state interest. By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without permitting the seating of jurors not qualified.

Footnote 3, *Henry* v. *Mississippi,* 379 U. S. 443, 448, is illuminating in this respect. It states:

"This will not lead inevitably to a plethora of attacks on the application of state procedural rules; where the state rule is a reasonable one and clearly announced to defendant and counsel, application of the waiver doctrine will yield the same result as that of the adequate nonfederal ground doctrine in the vast majority of cases."

The earliest antecedent of Section 2321.03, Revised Code, was passed by the General Assembly in 1852. Hence the above rules either were known or should have been known by appellant's counsel.

See, also, *Williams* v. *Georgia,* 349 U. S. 375; *Wolfe* v. *North Carolina,* 364 U. S. 177; *Layton* v. *Missouri,* 187 U. S. 356; *Herndon* v. *Georgia,* 295 U. S. 441.

In order for this court to consider the question presented here without a foundation having first been laid according to Ohio case law and statutory law would require the scrapping of the law which has been in force and effect for over 100 years. It would also require discarding this procedural requirement in civil cases. Every time an alleged "hard case" arose or an alleged "harsh result" occurred in either a civil or a criminal case a strenuous argument would be advanced that the requirement be ignored on the basis that it was a mere "technicality." The requirement was enunciated years ago in statutory law, and over the years has been refined to its present state by case law. To discard it now would create chaos, both in the civil and criminal branches of the law.

The United States Supreme Court has stated that federal constitutional rights are not violated when federal questions are not seasonably raised in accordance with the requirements of state law. Noncompliance with local law can thus be an adequate state ground for such a decision by state courts.

Where the affirmance of a state court conviction rests upon adequate ground under state procedure, there is no denial of due process. *Edelman* v. *California*, 344 U. S. 357.

A duty has been cast upon the various states to protect the integrity of their procedural requirements in their courts. It is my opinion that this court should have refused to entertain this appeal for the reasons herein stated.

TAFT, C. J. and MATTHIAS, J., concur in the foregoing concurring opinion.